UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 2:10-cr-00085-RLH-LRL |
| v. ) | |
| ) | MOTION TO SUPPRESS |
| MARTIN VOHWINKEL, ) | AND REQUEST FOR *FRANKS* |
| ) | HEARING (#17) |
| Defendant. ) | |

## REPORT & RECOMMENDATION

The defendant, Martin Vohwinkel, is under indictment on one count of Coercion and Enticement in violation of 18 U.S.C. § 2442(b). The charge stems from a Henderson Police Department ("HPD") investigation into the use of technology to lure a minor. The matter before the court is Vohwinkel's Motion to Suppress and Request for a *Franks* Hearing (#17), in which he contends that the affidavits accompanying one search warrant for Vohwinkel's residence and two search warrants for his living quarters and lockers at his place of employment contained deliberately false or recklessly misleading statements, without which the affidavits would not have demonstrated probable cause. Because Vohwinkel believes he has made a substantial preliminary showing that the affidavits contained deliberate or reckless misrepresentations, he contends that under *Franks v. Delaware*, 438 U.S. 155 (1978), he is entitled to an evidentiary hearing. The government filed an Opposition (#18), and Vohwinkel a Reply (#21). Having considered the motion, opposition and reply, the court submits this Report and Recommendation.

. . .

. . .

**BACKGROUND**

*The Investigation*

The facts underlying the investigation and the warrants are stated as follows in HPD Det. Nichols' affidavits dated February 26, 2010 and February 28, 2010, attached to Vohwinkel's motion as Exhibits B and C, respectively.[1]  On February 25, 2010, Det. Nichols, posing as a 14 year old girl, responded to a post on the casual encounters section of Craigslist.com[2] from a Gmail account created by the Henderson Police Department for this type of investigation.  The casual encounter ad sought a young girl, and a message included with the ad stated again that the poster was looking for a "very young girl."  Det. Nichols responded to the ad with an introduction.  Shortly thereafter, Vohwinkel replied from the email address fireeater10@hotmail.com, "acknowledging that he did in fact post the ad."  Vohwinkel asked whether Det. Nichols wanted to "fuck" and for how much.  Det. Nichols advised that "she" was younger, to which Vohwinkel responded, "the younger the better."  Det. Nichols then stated that "she" was a 14 year old female.  Vohwinkel responded that he was 45 and "needed [her] ASAP."  He then sent "her" a nude photograph of himself in front of a mirror.  In response to Det. Nichols' compliment on the house, as seen in the background of the photo, Vohwinkel said it was his house and he was "horny."  Det. Nichols attests that throughout the email communication, he "made numerous mentions as to being 14 years of age.  Given the subject's responses, it was evident that the subject not only believed he was communicating with a 14 year old female, but was doing so with the intention of luring her for sexual contact."

Later in the communication, Vohwinkel asked where he could pick up Det. Nichols, again stating that he wanted to "fuck" her.  When it became evident that the pair would be unable to meet that evening, Vohwinkel suggested they meet the next morning, February 26, 2010.  At Vohwinkel's request, Det. Nichols sent a photograph to Vohwinkel, using a forensically regressed image of a female

---

[1] Both warrants contain virtually identical accounts of the investigation and events leading up to Vohwinkel's arrest, after which the warrants issued.

[2] Attached as Exhibit A to the motion.

officer consistent with a 14 year old female. The image was neither sexual nor provocative. Vohwinkel provided another photograph of himself in a uniform consistent with that of a firefighter, and in which his face was clearly visible. He also stated that he was a firefighter and that his name was Marty.

Having tentatively set a meeting for February 26, 2010, the remainder of the email exchange revolved around deciding the exact location to meet. The pair agreed that Vohwinkel would pick up Det. Nichols in a Vons Supermarket parking lot located at 45 E. Horizon Ridge in Henderson. Vohwinkel stated he would be in a Toyota Tundra and provided his cell phone number. Vohwinkel offered to bring marijuana with him, as well. Det. Nichols asked what "she" should wear. Vohwinkel directed Det. Nichols to wear a skirt, a white half bra, and white cotton panties. Vohwinkel repeatedly requested naked photographs, and the continued communication made clear that he expected sexual contact to occur.

The next morning, HPD detectives set up surveillance in the Vons parking lot. At approximately 9:50 a.m., Det. Nichols sent an instant message (IM) from an undercover Yahoo IM account to the cell phone number provided by Vohwinkel. Vohwinkel expressed his continued interest in meeting and again described his vehicle as a white Toyota Tundra truck with a hard shell. Not long after this communication, HPD observed a white Toyota Tundra bearing Nevada license plate 888 RBG enter the Vons parking lot at 45 E. Horizon Ridge. The truck displayed a firefighter sticker, and a check of the vehicle registration revealed that the owner of the truck was Martin Vohwinkel. The driver, Vohwinkel, was the sole occupant of the truck, and his appearance matched that of the pictures sent to Det. Nichols. Det. Nichols called the cell phone number Vohwinkel had provided him. Vohwinkel's phone rang in response to the call. Officers arrested Vohwinkel in the parking lot.

Det. Nichols read Vohwinkel his *Miranda* rights and began to interview him. Vohwinkel confirmed his address as 8108 Wispy Sage Way in Las Vegas, Nevada, which he shared with his wife. He admitted that he had a computer at his home, and that he was the primary user of the computer. He also provided his email address, which matched the one that Det. Nichols had been communicating with the night before. Vohwinkel then said that he'd made a mistake and asked for a lawyer. The interview

ended, and Vohwinkel was transported to the Henderson Jail.

*The February 26, 2010, and February 28, 2010, Warrants*

Following Vohwinkel's arrest on February 26, 2010, Det. Nichols prepared, completed, and submitted an application for a search warrant for Vohwinkel's residence (the "February 26 warrant"). Henderson Justice of the Peace Rodney Burr approved the warrant. HPD detectives recovered portable electronic storage devices, digital cameras, a PC tower computer, a laptop computer, and a bong that contained residue consistent with marijuana usage. On February 28, 2010, after learning that Vohwinkel had asked a colleague to assist him in retrieving a personal computer that was stored in his living quarters at his assigned fire station ("Station 13"), Det. Nichols prepared, completed, and submitted a search warrant for Vohwinkel's living quarters and his personal lockers, Nos. 13 and 14, at Station 13 (the "February 28 warrant"). The warrant was signed by a Henderson Justice of the Peace and executed that day. Officers recovered electronic storage devices and CD/DVDs from Vohwinkel's locker. While executing the February 28 warrant, officers observed two pairs of female underwear, a pair of female jeans, condoms, and a Cialis tablet in the locker, all of which the officers photographed at the scene.

*The March 11, 2010 Warrant*

On March 11, 2010, FBI Special Agent Andrew Gruninger prepared, completed, and submitted a search warrant for Vohwinkel's lockers at Station 13 to collect the underwear, jeans, condoms, and Cialis pill noted to be in the lockers (the "March 11 warrant"). *See* Exh. D to Mot. (#17). That warrant was signed by the undersigned U.S. Magistrate Judge on March 11, 2010. From Locker No. 14, agents recovered a pair of smaller female blue jeans, five condoms, two pairs of panties, and a pill with "C20" stamped on it, *i.e.* Cialis.

**DISCUSSION**

An affidavit in support of a search warrant is accorded a "presumption of validity." *Franks v. Delaware*, 438 U.S. 154 (1978). In certain "narrow circumstances, however, a defendant may go beyond the facial sufficiency of an affidavit supporting a warrant, and challenge the truthfulness of the

4

factual statements made therein." *United States v. Chesher*, 678 F.2d 1353, 1360 (9th Cir. 1982). To be entitled to a hearing on such a challenge, the defendant must (1) "make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and (2) demonstrate that the affidavit purged of its falsities would not be sufficient to support a finding of probable cause. *Franks v. Delaware*, 438 U.S. at 155-56. An affiant acted with reckless disregard for the truth where he "in fact entertained serious doubts as to the truth of his allegations." *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984) (citation and internal quotations omitted). Allegations of deliberate falsehood or reckless disregard for the truth must be accompanied by an offer of proof. *See Franks*, 438 U.S. at 171-72. If the defendant is able to make this showing, the court then determines "whether with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *United States. v. Senchenko*, 133 F.3d 1153, 1158 (9th Cir. 1998).

***The February 26 and February 28, 2010 Affidavits of Det. Nichols***

Vohwinkel alleges that Det. Nichols' February 26, 2010 and February 28, 2010 affidavits contained two deliberately false or recklessly misleading statements, without which the affidavits would not have demonstrated probable cause. Both affidavits contained a virtually identical account of the investigation and events leading up to Vohwinkel's arrest. The two challenged statements are in the same portion of both affidavits; Vohwinkel does not dispute any other part of either affidavit. The disputed statements both relate to the February 25, 2010, email communication. Specifically disputed are Det. Nichols' statements that: (1) "the subject replied, acknowledging he did in fact post the ad"; and (2) "Throughout the communication, I made numerous mentions as to being 14 years of age. Given his responses, it was evident that the subject not only believed he was communicating with a 14 year old juvenile female, but was doing so with the intention of luring her for sexual contact." *Id.* at 4-5.

<u>Det. Nichols' Statement Regarding Vohwinkel's Acknowledgement that He Placed the Ad</u>

With regard to the first assertion, Det. Nichols' full statement was:

. . .

    On 2/25/10, I responded to the ad from a Gmail account created strictly for the purpose of undercover operations as this one. The first email I sent was simply an introduction and noted that I was replying to his posted Craigslist ad.  Shortly later, **the subject replied, acknowledging he did in fact post the ad.**  The reply came from the email, "fireeater10@hotmail.com."  The subject immediately asked if I wanted to fuck and asked how much. Even after advising the subject that I was younger, the subject replied, the "younger the better." (emphasis added).

    Vohwinkel attacks that bolded portion of the above statement as being false. Directing the court's attention to Exhibit E to the motion, which is the full email conversation between Vohwinkel and Det. Nichols, he asserts, "no where in the email conversation does Mr. Vohwinkel acknowledge that he posted the ad on Craigslist," Mot. (#17) at 4.  Vohwinkel maintains that since "the entire premise of the email conversation is based upon the nature of the ad," had the judge "known that Mr. Vohwinkel did not acknowledge that he posted the ad, the ensuing email exchange would have been viewed in a much different light." *Id.* at 4-5.  The government maintains that Det. Nichols' statement was in fact true based on the "Defendant's words, combined with the wording of the ad and the fact that the e-mail response to the ad went to him." Opp'n (#18) at 8.  Vohwinkel replies that Det. Nichols "did not suggest in his affidavit that several facts create an acknowledgment," but falsely stated "that Mr. Vohwinkel acknowledged that he posted the ad on Craigslist."  Reply (#21) at 2.

    The circumstances presented do not support a finding of deliberate disregard for the truth, or of recklessness by Det. Nichols, which would require that he have a high degree of awareness of probable falsity of his statement. *Senchenko*, 133 F.3d at 1158; *see also United States v. Garza*, 980 F.2d 546, 551 (9th Cir. 1992) ("There was no evidence that any of the alleged misrepresentations or omissions resulted from deliberate action by the affiant to mislead or from reckless disregard for the truth."). Contrary to Vohwinkel's assertion, Det. Nichols did not attest that Vohwinkel affirmatively stated that he "acknowledged that he posted the ad on Craigslist." Rather, Det. Nichols stated that he sent an email reply to the Craigslist ad and "shortly later, the subject replied, acknowledging that he did in fact post the ad."  The context – *i.e.*, an email response from an email address necessarily associated with a specific Craigslist posting, the language of which largely mirrors and expands on the language of the Craigslist ad itself – gives no support to the contention that Det. Nichols "entertained serious doubts

1 as to the truth" of his statement that the reply constituted acknowledging posting of the ad. *See*
2 *Williams*, 737 F.2d at 602. On the contrary, these circumstances strongly imply that the person
3 responding from the fireeater10@hotmail.com account was in fact a person who posted the ad, or was
4 otherwise associated with the ad in some fashion. At most Det. Nichols' use of the word
5 "acknowledging" could be considered imprecise. However, "[a]llegations of negligence or innocent
6 mistake are insufficient." *Franks*, *supra* at 171-72.

7 Even assuming, however, that Det. Nichols did recklessly, or even deliberately include this
8 sentence knowing it to be false, Vohwinkel's *Franks* claim fails because the determination of probable
9 cause would not have been affected. Det. Nichols' affidavit stated, among other things, that he sent
10 an introductory non-sexually explicit response to the Craigslist ad and shortly thereafter received an
11 email in reply from fireeater10@hotmail.com; the first email to the detective asked if the detective
12 wanted to fuck and for how much; statements made in that communication referred to the age of the
13 detective as 14 years and Vohwinkel replied that he needed her ASAP; when advised that the detective
14 was "young," Vohwinkel replied "the younger the better"; Vohwinkel sent a naked picture of himself;
15 Det. Nichols sent to Vohwinkel an age regressed photo depicting a girl of about 14; Vohwinkel told the
16 detective to wear a half bra, white cotton panties, and a skirt to their meeting; and he repeatedly asked
17 for naked pictures. These statements combined with Vohwinkel's own admission that his email address
18 matched that of the address with which Det. Nichols was communicating the night before provide ample
19 probable cause for the warrants to search for evidence to "directly connect Vohwinkel as the person"
20 with whom Det. Nichols was communicating and to obtain any existing evidence of similar
21 communications with other potential victims. *See* Nichols Aff., Exh. B to Mot. (#17) at p.4-6.

22 <u>Det. Nichols' Statement, "I made numerous mentions as to being 14 years of age."</u>

23 Vohwinkel next contends that Det. Nichols exaggerated the communications with him by stating
24 that he "made numerous mentions as to being 14 years of age," whereas a review of the email
25 communications reveals that Det. Nichols made a specific reference to being 14 years old only twice.
26 Mot. (#17) at 3; *see* Exh. E to Mot. (#17). The government maintains that Det. Nichols did not

misrepresent the communication between him and Vohwinkel, inasmuch as aside from twice explicitly stating that he was 14 years of age, Det. Nichols talked repeatedly about being young – stating among other things, "well I clearly don't drive..." and "my aunt's gonna let me rock home school"; talked about school; and spoke using the lingo of a teenager – and sent two age-regressed photos depicting a girl who appears to be around 14 years of age. Opp'n (#18) at 9. Vohwinkel replies that the government's argument must fail because Det. Nichols' "statement is very specific - 14 years old. Officer Nichols does not say 'I made numerous mentions of being young/underage/youthful/in high school.'" Reply (#21) at 3-4.[3]

Once again Vohwinkel fails to make a substantial preliminary showing that Det. Nichols' statement was falsely made with the intent to mislead or with a reckless disregard for the truth. At most the court could conclude that Det. Nichols might have used more precise wording, such as that he made numerous "allusions" to being 14 years old. The purpose of a *Franks* hearing, however, is not to split hairs over semantics. Nothing in the affidavits, on the record as a whole, or in Vohwinkel's briefing, suggests that Det. Nichols had any degree of awareness of probable falsity in using the words "numerous mentions," let alone the high degree necessary to warrant a *Franks* hearing. *See Senchenko*, *supra* at 1158; *Garza*, *supra* at 551. Moreover, even were the court to find that Vohwinkel had established the first *Franks* prong, he cannot establish the second prong. Setting aside the alleged misstatement, as explained above, *supra* at 7, both affidavits provide ample probable cause to search for evidence to "directly connect Vohwinkel as the person" with whom Det. Nichols was communicating and to obtain any existing evidence of similar communications with other potential victims.

***The March, 11, 2010, Affidavit of SA Gruninger***

The March 11, 2010, search warrant was sought to recover a pair of smaller female blue jeans, five "Magnum" condoms, two pair of panties thought to be girls' panties, and a baggie containing a

---

[3] The word "mentions" when used as a noun as here is defined as "a recognition or acknowledgment; a slight reference or allusion." American Heritage Dictionary of the English Language, (4th ed. 2000).

8

1. Cialis pill. These items were observed to be in Vohwinkel's work lockers while the HPD was executing
2. the February 28th warrant. The February 28th warrant authorized only the seizure of digital evidence
3. from Vohwinkel's lockers and office. SA Gruninger thus made an application for a third search warrant
4. to seize the above items as evidence. In his affidavit in support of the warrant, SA Gruninger stated
5. among other things:

> Detective Nichols relayed information to Affiant that Vohwinkel has posted numerous times on the website "Craigslist.com" that he wished to meet younger girls and has been doing so for quite some time. Detective Nichols advised that these posts consisted mainly of ads requesting sex from "younger" females.

8. Exh. D to Mot. (#17) at p.4.
9. Vohwinkel contends that this statement is reckless and untrue insofar as out of the 161 Craigslist
10. posts that Vohwinkel is alleged to have published, "[o]nly thirteen (13) of the one hundred and sixty-
11. one (161) posts utilize the word young." Mot. (#17) at 5-6; *see* Exh. E to Mot. (#17). Because SA
12. Gruninger's statement is based on the statement of Det. Nichols, a *Franks* hearing is appropriate only
13. if Vohwinkel can make a substantial preliminary showing that the affidavit's alleged false statements
14. were deliberately or recklessly made by either SA Gruninger or Det. Nichols *See United States v.*
15. *DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992) ("misstatements or omissions of government officials which
16. are incorporated in an affidavit for a search warrant are grounds for a *Franks* hearing, even if the official
17. at fault is not the affiant").
18. Even if the court were to accept Vohwinkel's premise that thirteen posts cannot properly be
19. characterized as "numerous," he does not point to any evidence tending to show that the statement was
20. made with a reckless disregard for the truth. Thirteen out of 161 posts constitute 8% of the posts.
21. Whether 8% of Vohwinkel's Craigslist posts can strictly be characterized as "numerous" is a matter of
22. semantics. Because reasonable minds may differ on such a heady question, it is unreasonable to
23. conclude that either SA Gruninger or Det. Nichols' use of the word "numerous" was a deliberate or
24. reckless attempt to grossly exaggerate or overstate the clear fact that Vohwinkel was posting ads in
25. search of young girls. At most, Vohwinkel points to the possible lack of care of Det. Nichols and/or
26. SA Gruninger in failing to note the precise number of Vohwinkel's Craigslist ads that used the words

"young" or "younger."  A showing of mere carelessness or negligence, however, is insufficient to warrant a *Franks* hearing.  *See Franks*, supra at 171-72.  Finally, even were the court to omit the challenged statement, the remaining details provided by SA Gruninger amply demonstrate probable cause to search for and seize the panties, jeans, condoms, and pills as possible instrumentalities, fruits, and evidence of violations of 18 U.S.C. § 2422, relating to the sexual exploitation of minors.[4]  *See* SA Gruninger Aff., Exh. D to Mot. (#17) at ¶ 3.

### RECOMMENDATION

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that Vohwinkel's Motion to Suppress and Request for a *Franks* Hearing (#17) should be denied without a hearing.

DATED this 27th day of August, 2010.

_____
**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] For example, SA Gruninger provided, *inter alia*, an abridged statement of the events leading up to Vohwinkel's arrest for enticement, including, "Vohwinkel had placed a Craigslist ad for sex with a girl, 'the younger the better,' in exchange for money."  Additionally, he stated that the panties did not look as though they would fit an adult; that the blue jeans were "smaller" female jeans; all of the items sought had been observed to be in the locker; and that affiant believed the clothing to belong to either a victim of Vohwinkel or were going to be given to a young girl as a gift in the process of committing the crime of coercion and enticement.  *See* Gruninger Aff., Exh. D to Mot. (#17).